UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

TAIWO OLORODE,                                    Docket No. 11-CV-6934 (GBD) (AJP)

Plaintiff,

-against-

STREAMINGEDGE, INC. and
TRADITION (North America), INC.

Defendant.

-------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT STREAMINGEDGE, INC.'S
## MOTION FOR SUMMARY JUDGMENT

REISMAN, RUBEO & McCLURE, LLP
*Attorneys for Defendant Streamingedge, Inc.*
151 Broadway
Hawthorne, New York 10532
(914) 495-3050

## TABLE OF CONTENTS

Table of Authorities.................................................................iii

Preliminary Statement..............................................................1

Statement of Facts...................................................................2

Discussion...............................................................................2

Point I – Standard of Review.....................................................2

Point II – Streamingedge Must Be Awarded Judgment Dismissing Plaintiff's
    Claims Made Pursuant to the NYSHRL........................................3
    A.    Olorode's Discrimination Claims Must Be Dismissed.................3
        1.    Plaintiff Cannot Sustain His Initial Burden Under the
            McDonnell Douglas Framework.................................5
            a.    Plaintiff's Claim That He Was Forced to Perform
                Menial Work Is Not Actionable.........................6
            b.    Nasty Statements By Olorode's Non-Decision-
                making Co-Workers Are Not Actionable..............7
            c.    Nweke's Nigerian Descent Undermines Any
                Inference of Discrimination Against Olorode.........8
            d.    There Is No Evidence That Olorode Was Treated
                Any Differently Than Other Employees...............9
        2.    Streamingedge Has Produced Evidence of a Valid,
            Non-Discriminatory Reason for Plaintiff's Termination.....10
        3.    It Is Plaintiff's Burden to Produce Admissible Evidence
            That Streamingedge's Reduction in Workforce Was
            Pretextual..........................................................12
    B.    Olorode's Retaliation Claims Must Be Dismissed.....................12
        1.    Mr. Olorode's Complaint That He Did Menial Work and
            Worked Long Hours Was Not a Protected Activity..........13
        2.    There Is No Causal Connection Between the Allegedly
            Protected Activity and Olorode's Termination...............16

Point III – Streamingedge Must Be Awarded Judgment Dismissing Plaintiff's
    Claims Made Pursuant to the NYCHRL.....................................18
    A.    Olorode's Discrimination Claim Must Be Dismissed.................18
    B.    Olorode's Retaliation Claim Must Be Dismissed......................18

Point IV – Plaintiff's Claim for Overtime Pursuant to the FLSA and the New
    York Labor Law Must Be Dismissed........................................19
    A.    Mr. Olorode Was an Exempt, Salaried Computer Employee.........19
    B.    Mr. Olorode Was an Exempt, Salaried Administrative Employee...24
    C.    Mr. Olorode's FLSA Claim is Partially Time-Barred.................26

D.    Mr. Olorode Did Not Work the Overtime Hours Alleged in the Complaint...................................................................27

Point V – Streamingedge is Entitled to Judgment Dismissing Plaintiff's Claim for Breach of Contract.........................................................27

Conclusion..................................................................................29

# TABLE OF AUTHORITIES

Statutes
Federal:
42 U.S.C. §§ 1981, 2000e *et seq*……………………….…………………………….…..2,3
Fair Labor Standards Act, 29 U.S.C. § 201 et seq……........……... 1, 19, 20, 21, 23, 24, 26, 27
Federal Rule of Civil Procedure 12(b) ……………….…………….…..……………………3
Federal Rule of Civil Procedure 56……………………...…………………...………...1, 2, 29

New York State:
New York Labor Law, 12 N.Y.C.R.R. § 142-3.2.…………...…………………1, 21, 23, 24, 26
New York State Human Rights Law, Executive Law §§ 290 *et seq*………1, 3, 4, 12, 17, 18, 19

New York City:
New York City Human Rights Law, Administrative Code of City of N.Y. 8-107(7)… 1, 18, 19

Regulations
29 C.F.R. § 541.200(a)………………………………………………….……..24
29 C.F.R. §541.201(a)…………………………………………………….……..24
22 C.F.R. § 541.201(c)………………………………………………….……..24
29 C.F.R. § 541.202(a)………………………………………………….……..25
29 C.F.R. § 541.202(b)………………………………………………….……..25
29 C.F.R. §541.202(c)………………………………………………….……..25
29 C.F.R. §541.400…………………………………………………….……..21, 22
29 C.F.R. § 541.400(b)………………………………………………….……..23
29 C.F.R. §541.601…………………………………………………….……..20
29 C.F.R. § 541.602………………………………………………….……..23
29 C.F.R. § 541.700………………………………………………….……..21

Decisions
*Abdu-Brisson v. Delta Airlines, Inc.*
239 F.3d 456 (2d Cir. 2001), *cert denied*, 534 U.S. 993, 120 S.Ct. 460 (2001)………………10

*Amendola v. Bristol-Myers Squibb Co.*
558 F.Supp.2d 459 (S.D.N.Y. 2008)……………………………………………… 24, 25

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 106 S.Ct. 2505 (1986)…………………………………….…………...2

*Aspilaire v. Wyeth Pharmaceuticals, Inc.*
612 F.Supp.2d 289 (S.D.N.Y. 2009)……………………………………………13

*Auer v. Robbins*
519 U.S. 452, 117 S.Ct. 905 (1997)……………………………………….……..20

*Baguer v. Spanish Broadcasting System, Inc.*, No. 04 Civ. 8393
2010 WL 2813632 (S.D.N.Y., July 12, 2010), *aff'd*, 423 Fed. Appx. 102
(2d Cir. 2011)...................................................................................4, 8

*Bengard v. United Parcel Service*, No. 99–CV–8454
2001 WL 1328551 (E.D.N.Y., Aug. 22, 2001), *aff'd*, 48 Fed.Appx. 350 (2d Cir. 2002)...........13

*Beyer v. County of Nassau*
524 F.3d 160 (2d Cir. 2008).......................................................................16

*Chimarev v. TD Waterhouse Investor Services, Inc.*
280 F.Supp.2d 208 (S.D.N.Y. 2003), *aff'd*, 99 Fed.Appx. 259 (2nd Cir. 2004)..................3

*Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400
2010 WL 1379778 (S.D.N.Y., March 26, 2010)......................................20, 21, 26, 27

*Cohen v. Gerson Lehrman Group, Inc.*, No. 09 Civ. 4352
2011 WL 4336683 (S.D.N.Y. Sept. 15, 2011)...............................................24, 25

*Cunningham v. Electronic Data Systems Corp.*
754 F.Supp.2d 638  (S.D.N.Y. 2010)..................................................................20

*Desir v. City of New York*
453 F. Appx. 30 (2d Cir. 2011).................................................................3, 12

*Douglass v. Rochester City School District*
522 Fed Appx. 5 (2d Cir. 2013)......................................................................3

*Elfenbein v. Bronx Lebanon Hospital Center*, No. 08 Civ. 5382
2009, WL 3459215  (S.D.N.Y., Oct. 27, 2009)........................................................8

*Fleming v. MaxMara USA, Inc.*
371 Fed Appx. 115 (2d Cir. 2010)...............................................................8, 12

*Forrest v. Jewish Guild for the Blind*
3 N.Y.3d 295, 786 N.Y.S.2d 382 (2004)......................................................7, 8, 13

*Freeman v. National Broadcasting Co., Inc.*
80 F.3d 78 (2d Cir. 1996)...........................................................................24

*Fridia v. Henderson*, No. 99 Civ. 10749
2000 WL 1772779 (S.D.N.Y., Nov. 30, 2000)..........................................................16

*Galabya v. New York City Board of Education*
202 F.3d 636 (2d Cir. 2000).........................................................................16

*Gallo v. Prudential Residential Servs., L.P.*
22 F.3d 1219 (2d Cir.1994)............................................................................2, 10

*Gladwin v. Pozzi*
403 Fed. Appx. 603 (2d Cir. 2010)........................................................5

*Gue v. Suleiman,* No. 10–CV–8958
2012 WL 4473283 (S.D.N.Y. Sept.27, 2012)........................................7

*Gutierrez v. City of N.Y.*
756 F.Supp.2d 491 (S.D.N.Y. 2010) ....................................................19

*IBP, Inc. v. Alvarez*
546 U.S. 21, 25, 126 S.Ct. 514 (2005)..................................................20

*Karim-Seidou v. Hospital of St. Raphael*, No. 09 Civ. 51
2012 WL 6628886 (D. Conn., Dec. 19, 2012) .....................................9

*Katz v. Beth Israel Medical Center,* No. 95 Civ. 7183
2001 WL 11064 (S.D.N.Y., Jan. 4, 2001)............................................16

*Lerman v. Board of Elections in City of New York*
232 F.3d 135 (2d Cir. 2000), *cert. denied*, 533 U.S. 915, 121 S.Ct. 2520 (2001)....................3

*Matsushita Electrical Industries Co. v. Zenith Radio Corp.*
475 U.S. 574, 106 S.Ct. 1348 (1986)....................................................2

*Mayers v. Emigrant Bancorp, Inc.*
796 F.Supp.2d 434 (S.D.N.Y. 2011)......................................................13

*McDonnell Douglas Corp. v. Green*
411 U.S. 792, 93 S.Ct. 1817 (1973).......................................4, 5, 9, 12, 18

*Mi-Kyung Cho v. Young Bin Café*, No. 10 Civ. 3785
2013 WL 4804191 (S.D.N.Y., Sept. 9, 2013)..........................2, 13, 15, 19

*Miller v. Praxair, Inc.*
408 F. Appx. 408 (2d Cir. 2010), cert. denied, 131 S.Ct. 3067 (2011) ............................16

*Moore v. Kingsbrook Jewish Medical Center*, No. 11–CV–3625
2013 WL 3968748 (E.D.N.Y., July 30, 2013)...........................5, 8, 17

*Niagara Mohawk Power Corp. v. Jones Chemical, Inc.*
315 F.3d 171 (2d Cir. 2003).................................................................4

*O'Connor v. Consolidated Coin Caterers Corp.*
517 U.S. 308, 116 S.Ct. 1307 (1996)……………………………………………….....4

*Potash v. Florida Union Free School District*, No. 10 Civ. 3299
2013 WL 5273792 (S.D.N.Y., Sept. 18, 2013)………………………………….……………5, 9, 16

*Price Waterhouse v. Hopkins*
490 U.S. 228, 109 S.Ct. 1775 (1989)……………………………………….……….7

*Pucino v. Verizon Communications, Inc.*
618 F.3d 112 (2d Cir. 2010)……………………………………………………....3

*Reeves v. Sanderson Plumbing Products, Inc.*
530 U.S. 133, 120 S.Ct. 2097 (2000)………………………………………………...5

*Reiseck v. Universal Communications of Miami, Inc.*
591 F.3d 101 (2d Cir. 2010)……………………………………………………...21

*Samuels v. Mockry*
77 F.3d 34 (2d Cir.1996)…………………………………………….……………2

*Stern v. Trustees of Columbia Univ.*
131 F.3d 305 (2d Cir. 1997)……………………………………………………….4

*Tappe v. Alliance Capital Management, L.P.*
177 F.Supp.2d 176 (S.D.N.Y. 2001)……………………………………………….10

*Texas Dept. of Community Affairs v. Burdine*
450 U.S. 248, 101 S.Ct. 1089 (1981)………………………………………….…..5

*Turner v. NYU Hospitals Center*
784 F.Supp.2d 266 (S.D.N.Y. 2011), aff'd, 470 Fed.Appx. 20 (2d Cir. 2012)………..…4, 10, 12

*Weinstock v. Columbia University*
224 F.3d 33 (2d Cir. 2000)…………………………………………….……..3, 12

*Wilson v. New York City Police Dept.*, No. 09 Civ. 2632
2013 WL 878585 (S.D.N.Y., Feb. 6, 2013)……………………………………3, 4, 17, 18

*Yoselovsky v. Associated Press*
917 F.Supp.2d 262 (S.D.N.Y. 2013)……………………………………………...16

## **PRELIMINARY STATEMENT**

This Memorandum of Law is submitted by Defendant, Streamingedge, Inc., ("Streamingedge") in support of its motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing all causes of action against it in this action commenced by Plaintiff Taiwo Olorode ("Mr. Olorode" or "Plaintiff"). Mr. Olorode alleges that he was discriminated and retaliated against by Streamingedge by virtue of his national origin (Mr. Olorode is a native Nigerian) in violation of the New York State Human Rights Law, Executive Law §§ 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of City of N.Y. § 8-107(7) ("NYCHRL"). Mr. Olorode also claims he is entitled to overtime payments pursuant to the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and New York Labor Law, 12 N.Y.C.R.R. § 142-3.2, and alleges a breach of a purported employment contract.

Mr. Olorode has failed to state a prima facie case for either discrimination or retaliation. Furthermore, even if a prima facie case were stated, the record is clear that his termination was not the result of either discrimination or retaliation: Mr. Olorode was one of five people who were terminated as part of a reduction in workforce. None of the others were Nigerian.

Mr. Olorode cannot maintain a claim for overtime under the FLSA or New York Labor Law because he was a salaried, exempt employee not entitled to overtime compensation. Furthermore, the FLSA claim is largely time-barred.

Finally, Mr. Olorode seeks recovery pursuant to a March 2008 proposed contract that he failed to execute. That proposed contract provided for ancillary benefits above and beyond those set forth in the earlier, fully executed employment contract dated November 5, 2007, but, in any event, recovery under either was predicated upon Mr. Olorode executing a release, which he

failed to do.  For all of these reasons, there are no issues of material fact requiring a trial, and Streamingedge is entitled to judgment dismissing all causes of action.

## STATEMENT OF FACTS

Mr. Olorode worked at Streamingedge as a Systems Support Analyst from early November 2007 until his termination on April 13, 2010 as part of a reduction in workforce. Other undisputed material facts are set forth in the Rule 56.1 Statement submitted by Streamingedge in support of this motion.

## DISCUSSION

### POINT I
### STANDARD OF REVIEW

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50, 106 S.Ct. 2505 (1986)).  The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223-24 (2d Cir.1994). Nevertheless, "[t]he nonmoving party cannot defeat summary judgment by 'simply show[ing] that there is some metaphysical doubt as to the material facts." *Mi-Kyung Cho v. Young Bin Café*, No. 10 Civ. 3785, 2013 WL 4804191 *5 (S.D.N.Y., Sept. 9, 2013), quoting *Matsushita Electrical Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).

The applicable legal standards are "essentially the same" for discrimination claims under Federal law (42 U.S.C. §§ 1981, 2000e *et seq.*) and the New York State Human Rights Law (Executive Law §§ 290 *et seq.*). *Douglass v. Rochester City School District*, 522 Fed. Appx. 5, 7 (2d Cir. 2013). Courts in this Circuit "review discrimination claims brought under the NYSHRL ... according to the same standards that ... apply to Title VII discrimination claims." *Pucino v. Verizon Communications, Inc.*, 618 F.3d 112, 117n (2d Cir. 2010) (citation omitted). The somewhat different standard of proof for claims made pursuant to the New York City Human Rights Law will be addressed below in discussing those particular causes of action herein. [1]

**POINT II**
**STREAMINGEDGE MUST BE AWARDED JUDGMENT DISMISSING PLAINTIFF'S CLAIMS MADE PURSUANT TO THE NYSHRL**

**A.     Olorode's Discrimination Claims Must Be Dismissed**

Summary judgment can be appropriate in discrimination cases, "as 'the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation.'" *Wilson v. New York City Police Dept.*, No. 09 Civ. 2632, 2013 WL 878585 *9 (S.D.N.Y., Feb. 6, 2013), quoting *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000). See also, *Desir v. City of New York*, 453 F.

---

[1] Plaintiff is currently appearing *pro se*, but it bears noting that he was represented by counsel for much of the course of this litigation: an attorney drafted the original and amended pleadings; defended the 12(b) motion to dismiss; represented Mr. Olorode at all depositions except the third session of Mr. Olorode's deposition; and drafted and oversaw much of the documentary discovery in the action. Thus, it is respectfully submitted that Mr. Olorode's complaint should not be viewed under the "more flexible" standard by which *pro se* complaints are evaluated. *See Lerman v. Board of Elections in City of New York*, 232 F.3d 135, 140 (2d Cir. 2000), *cert. denied*, 533 U.S. 915, 121 S.Ct. 2520 (2001). In any event, "proceeding *pro se* does not exempt a party from compliance with relevant rules of procedural and substantive law." *Chimarev v. TD Waterhouse Investor Services, Inc.*, 280 F.Supp.2d 208, 222 (S.D.N.Y. 2003), *aff'd*, 99 Fed.Appx. 259 (2nd Cir. 2004) (citations, internal quotation marks omitted).

Appx. 30, 33 (2d Cir. 2011). "A defendant will be entitled to summary judgment unless the plaintiff 'can point to evidence that reasonably supports a finding of prohibited discrimination.'" *Turner v. NYU Hospitals Center*, 784 F.Supp.2d 266, 276 (S.D.N.Y. 2011), *aff'd*, 470 Fed.Appx. 20 (2d Cir. 2012) (citation omitted). "[T]he plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997).

Claims of discrimination under New York law are analyzed by the three-step, burden-shifting formula set forth for Federal discrimination claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817 (1973); *See, e.g., Baguer v. Spanish Broadcasting System, Inc.*, No. 04 Civ. 8393, 2010 WL 2813632 *5 (S.D.N.Y., July 12, 2010), *aff'd*, 423 Fed. Appx. 102 (2d Dir. 2011). Under the *McDonnell Douglas* framework, the employee must first produce the following evidence sufficient to support of prima facie case of discrimination: (1) membership in a protected class, (2) qualification for the position, (3) an adverse employment action, and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Baguer, supra*, at 6. Mere speculation will not satisfy this fourth prong of the test – "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Wilson. Supra, at* *12, quoting *Niagara Mohawk Power Corp. v. Jones Chemical, Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).

Once a plaintiff has met this initial burden, it becomes defendant's burden to "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]," *Bauger, supra* at *6 (quoting *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 211, 116 S.Ct. 1307 (1996)), through the production of admissible evidence setting forth the reason for

plaintiff's termination, although "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089 (1981). Thereafter, the burden shifts back to the plaintiff to provide evidence that defendant's reason is a mere pretext for discrimination. *Id. At* 253 (citing *McDonnell Douglas, supra*, at 804, 1825). Nevertheless, it remains a plaintiff's burden ultimately to persuade the trier of fact that defendant intentionally discriminated against him. *Potash v. Florida Union Free School District*, No. 10 Civ. 3299, 2013 WL 5273792 *14 (S.D.N.Y., Sept. 18, 2013), citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097 (2000).

1. <u>Plaintiff Cannot Sustained His Initial Burden Under the McDonnell Douglas Framework</u>

Mr. Olorode cannot sustain his initial burden of setting forth a prima facie case. It is not disputed that, as a Nigerian-born naturalized American, Mr. Olorode is a member of a protected class based on national origin (*see Moore v. Kingsbrook Jewish Medical Center*, No. 11–CV–3625, 2013 WL 3968748 *5 (E.D.N.Y., July 30, 2013), and he has presented evidence that he was qualified for the position of Systems Support Analyst -- he had a certificate from Columbia University's computer application and technology program, with a specialty in network administration, computer network administration and design (**Exhibit M, Olorode deposition transcript of 11/30/12, p. 32**); he had a diploma from a 2-year program at the Chubb Institute in computer technical support and data center administration (***id., at 39***); he received training from Dell and Sony (***id., at 57-58, 66***); he had been a field service engineer for DecisionOne Incorporated from 2003 or 2004 until 2007 (***id. at 59***). Mr. Olorode's termination from employment at Streamingedge on April 13, 2010 was an adverse employment action. *Gladwin v. Pozzi*, 403 Fed. Appx. 603, 606 (2d Cir. 2010). Nevertheless, evidence satisfying the fourth

prong of the test, i.e., that there be circumstances giving rise to an inference of discrimination, is non-existent.

        a.    *Plaintiff's Claim That He Was Forced To Perform Menial Work Is Not Actionable*

The gravamen of Mr. Olorode's claim is that Wilson Nweke ("Mr. Nweke" or "Wilson"), Streamingedge's CEO until approximately April 2009, and thereafter its President, allegedly "require[d] Olorode to perform menial tasks unrelated to Olorode's position as a Systems Support Analyst. Those duties included: assisting the maids by cleaning the floors and desks and performing Wilson's personal errands." (**Exhibit A, Amended Complaint, ¶ 20**). The Amended Complaint continues, alleging that "Wilson did not require the other Systems Support Analysts to perform tasks of a similar nature" (***id.***, **¶ 20**), and goes on to list the personal errands that Mr. Nweke supposedly made Mr. Olorode perform in addition to his regular duties. (***Id.***, **¶ 21**). The Amended Complaint conclusorily alleges that "Wilson assigned the aforementioned menial tasks to Olorode because of his national origin," (***id.***, **¶ 24**) but provides no details to support this allegation.

Mr. Olorode has provided no evidence to support an inference that he was treated as he alleges *on account of his national origin.* His deposition testimony is replete with complaints about long hours (**Ex. N, transcript of deposition of Taiwo Olorode dated January 9, 2013, pp. 274-76**), but Mr. Olorode also said "Wilson's instruction is we all constantly have to always be there." (***Id.*, p. 271**). He cites a long list of grievances, including the following: a) that Nweke once made him come to work when he was sick (*id.* **at 302**); b) that he had to "carry bags" for unidentified persons (he did it "4 or 5 times" – **pp. 354-5**; it was "constant" – **pp. 436-37**); c) that he traveled to Barbados on Nweke's personal business (**pp.404-05**); d) that individuals talked to him "in a very worthless . . .derogatory tone . . . very dismissive and disrespectful on a

daily basis;" (**p. 417**); e) that he was "treated like garbage" by Nweke and some of the developers (**p. 420**); f) that the support staff made fun of him (**p. 440**); and g) that he was excluded from e-mails in the fall of 2009 (**pp. 453-57**).

As offensive as those claims may be if true, none could reasonably lead a rational juror to infer that any of these slights were because of Mr. Olorode's national origin. Rather, what Mr. Olorode paints, largely through hearsay, is a picture of a company where, at the very worst, people were disrespectful to him.

"[U]nfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable." *Gue v. Suleiman,* No. 10–CV–8958, 2012 WL 4473283 *8 (S.D.N.Y. Sept.27, 2012) (citation omitted). *See also, Forrest v. Jewish Guild for the Blind,* 3 N.Y.3d 295, 308, 786 N.Y.S.2d 382, 393 (2004).

        b.     *Nasty Statements by Olorode's Non-Decisionmaking Co-Workers Are Not Actionable*

Mr. Olorode places great reliance on excerpts of a lengthy instant message conversation between Jesse Caruso and Joren Gaucher, both Streamingedge employees *but not Olorode's superiors,* in which they said nasty things about many of their co-workers (not all Nigerian), including Mr. Olorode, calling them "f-ing babies," "monkeys" and the like. If one reads the entire series of messages, annexed as **Exhibit J**, it is apparent that the two men were merely saying nasty, catty things about many of their co-workers.

Mr. Olorode's reliance on this event as a basis for his discrimination claim is misplaced: first of all, "'statements by nondecisionmakers, or statements made by decisionmakers unrelated to the decisional process itself,' are insufficient to establish discriminatory intent." *Forrest, supra,* at 308, quoting Justice O'Connor's concurring opinion in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775 (1989). Second, an isolated "stray" remark such as this

cannot give rise to an inference of discrimination to lead to a finding of hostile work environment:[2] "[E]ven a "mere[ly] offensive... racial slur is reprehensible. But it is not actionable. Here the epithets complained of did not pervade plaintiff's work environment having allegedly occurred on three occasions over nine years. A hostile work environment requires 'more than a few isolated incidents of racial enmity'…[i]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments."). *Forrest, supra,* at 394

Thus, even if calling anyone an "F-ing moron" or "monkey" could possibly be construed as an epithet concerning Mr. Olorode's national origin, such a single instance of name-calling by non-supervising co-workers is not actionable.

     *c.*    *Nweke's Nigerian Descent Undermines Any Inference of Discrimination Against Olorode*

To the extent that Mr. Olorode complains primarily of his treatment at the hands of Wilson Nweke, it is notable that Mr. Nweke is also of Nigerian descent (**Exhibit A, ¶ 14**) which "undermines any inference of discrimination . . . . '[I]nvidious discrimination is unlikely where, as here, the person who made the termination decision … is in the same protected class' as the employee." *Baguer, supra,* at \*15, quoting *Elfenbein v. Bronx Lebanon Hospital Center*, No. 08 Civ. 5382, 2009 WL 3459215 \*7 (S.D.N.Y., Oct. 27, 2009). *See Moore, supra,* at \*11.

---

[2] Plaintiff has not alleged a separate claim of a hostile work environment. Nevertheless, to the extent that the complaint could possibly be construed to contain such a cause of action, it fails to state a claim. *See Fleming v. MaxMara USA, Inc.,* 371 Fed. Appx. 115 (2d Cir. 2010) ("Fleming …alleges that defendants wrongly excluded her from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her. These incidents do not support a finding of a hostile work environment that is pervasive or severe.").

       d.     *There is No Evidence That Olorode Was Treated Any Differently Than Other Employees*

Additionally, the evidence adduced by Plaintiff's former counsel during discovery belies Mr. Olorode's assertion that he was treated any differently than anyone else. Mr. Nweke testified at length about the numerous Streamingedge employees who performed personal services for him, particularly Jorge Rivas and Hideki Okubo (**Exhibit P, Wilson Nweke deposition transcript of March 1, 2013, pp.143-171**), none of whom [except for Nweke's brother Ikenna] is Nigerian.[3] The Affidavit of Hideki Okubo, Mr. Olorode's immediate superior of Japanese descent, details similar personal errands that he himself performed for Mr. Nweke (**Okubo Affidavit, ¶¶ 19-21**). In light of this, there cannot be any inference that any of the extra tasks Olorode alleges he was made to do were in any way related to his Nigerian descent.

All of the complaints made by Mr. Olorode amount, at best, to an unsupported belief that he was discriminated against, which is an insufficient basis for denying Streamingedge summary judgment. A plaintiff's own subjective belief that he was discriminated against because of his national origin is an insufficient basis for denying a defendant summary judgment. *Karim-Seidou v. Hospital of St. Raphael*, No. 09 Civ. 51, 2012 WL 6628886 *5 (D. Conn., Dec. 19, 2012). *See Potash, supra* at *23.

---

[3] Mr. Nweke stated at his deposition that Mr. Olorode volunteered to do each of the personal errands performed (find health insurance for Nweke's mother – **Exhibit P, pp. 173-75**; assist with visa applications for Nweke's relatives – ***id.*, pp. 194-96**; possibly with selection of au pair for Nweke's children – ***id.*, p. 198**; acquire cars with Nweke's brother – ***id.*, pp. 200-02**) and also denied that Mr. Olorode even did some of the errands alleged in the complaint, such as being forced to carry bags for foreign visitors (***id.*, pp. 207-08**), or move furniture for Nweke's wife (***id.*, pp. 205-06**). Nevertheless, even were we to accept Mr. Olorode's version of events, there is still no nexus between the actions complained of and the conclusion that Mr. Olorode was a victim of illegal discrimination.

2.    <u>Streamingedge Has Produced Evidence of a Valid, Non-Discriminatory Reason for Plaintiff's Termination</u>

Under the burden-shifting approach of *McDonnell Douglas*, a defendant who offers a non-discriminatory basis for terminating an employee that, "taken as true, would permit the conclusion that there was a non-discriminatory reason for the adverse action," has met its burden. *Abdu-Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 469 (2d Cir), *cert denied*, 534 U.S. 993, 120 S.Ct. 460 (2001) (citation omitted). "An employer can fire an employee for any reason as long as it is not discriminatory even if based on reasons that are 'unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility.'" *Tappe v. Alliance Capital Management, L.P.*, 177 F. Supp.2d 176, 185n (S.D.N.Y. 2001) (internal citation omitted).   A reduction in workforce is a legitimate, non-discriminatory reason for terminating an employee. *Gallo, supra; Turner, supra*, at 277.

Mr. Olorode was one of five Streamingedge employees terminated as a result of a cost-cutting reduction in workforce that was mandated at or shortly before Yann L'Huillier became CEO in early April 2010.  This round of layoffs continued a cost-cutting process that began in 2009.  Mr. Nweke testified at his examination before trial on March 1, 2013 that when there was a change in management, "they laid out a plan that there'd be cost cutting from across the board from that time onwards."  (**Exhibit P, pp. 93-94**).

Earlier, Mr. Nweke had testified more specifically about the five people terminated in April 2010, including Mr. Olorode:

Q.    So who made the decision to terminate Mr. Olorode's employment?
A.    Well, we have a new management, which was on top of me, so, and they were cutting costs.
        And they ask about from the head office, they said cost reduction, and the managers have to cut costs from each department.
        So I was not involved in that decision-making process.  So the manager Hideki cut costs on his department, which means he submitted Mr. Olorode's name.

I think that Mr. Jaballah also had that department, he submitted names, and they sent it to the head office, and so that's how that happened....

\*\*\*

Q.      Did Mr. Okubo and Mr. Jaballah consult with you concerning the names that were placed upon their suggested lists?
A.      No, they just bring the names.  We were mandated to cut costs.
Q.      How many individuals did you terminate in April of 2010?  By "you," I mean Streamingedge.  How many individuals at Streamingedge –
A.      In April 2010, this was a process that was continuing.  So not just in April. There are other ones continue the process.
        But at the time Mr. Olorode was, I think it's about five people or so at the same time were terminated.

(**Exhibit P, pp. 84-86**).

Mr. Nweke identified the four additional Streamingedge employees terminated at the same time as Mr. Olorode:   Jason Melone (Project Manager), Irwin [sic] Basa (Quality Assurance), Karthik [last name unknown] (Quality Assurance] and Amy Tsang (Business Analyst). (*Id.* **p. 88-90**).  None of these persons were Nigerian (**Affidavit of Lyudmila Fayman, ¶ 11**).

Hideki Okubo, Mr. Olorode's immediate superior, states in his Affidavit that he followed instructions and selected Mr. Olorode as the member of his Systems Support team who would be terminated as part of the mandatory cost cutting.  (**Okubo Affidavit, ¶ 37**).

Yann L'Huillier, the CEO of Streamingedge at the time Mr. Olorode was terminated, states in his Declaration that Nweke gave him a list of five people whose positions were to be terminated "as part of Streamingedge's mandated reduction in force" that would yield an annual cost savings of $545,000.00, and states that he "reviewed and approved the list before the cuts were implemented." (**L'Huillier Declaration, ¶ 7**).

In sum, the record in this case amply demonstrates that Mr. Olorode was terminated from his position at Streamingedge in April 2010 as part of a company-wide reduction in workforce.

As such, even if the Court were to find that Mr. Olorode has stated a prima facie case for discrimination, Streamingedge has more than met its burden of rebutting Mr. Olorode's assertion, under the *McDonnell Douglas* framework, by demonstrating that it terminated Mr. Olorode for a legitimate, non-discriminatory reason.

### 3. Plaintiff Cannot Produce Admissible Evidence That Streamingedge's Reduction In Workforce Was Pretextual

For the reasons stated above, Mr. Olorode has the burden to come forward with admissible evidence that the termination of five employees, including himself, in April 2010 was a pretext for the company to discriminate against Olorode based on his national origin. *McDonnell Douglas, supra.* He must produce "not simply 'some evidence,' but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by [Streamingedge] were false, and that more likely than not [discrimination] was the real reason for the [employment action].' " *Turner, supra,* at 277n, quoting *Weinstock v. Columbia University, supra,* at 42.   "Only when an employer's business decision is so implausible as to call into question its genuineness should this Court conclude that a reasonable trier of fact could find that it is pretextual." *Fleming v. MaxMara USA, Inc., supra,* at 118. Streamingedge made a legitimate business decision to terminate Mr. Olorode's employment in an effort to cut costs. As a result, Streamingedge submits that Olorode cannot meet his burden on this issue, and that Streamingedge is entitled to judgment dismissing the First Claim.

## B.   Olorode's Retaliation Claims Must Be Dismissed

Courts also analyze retaliation claims under the three-step burden-shifting approach of *McDonnell Douglas Corp, supra.  Desir v. City of New York, supra,* at 33. A prima facie case for retaliation under the New York State Human Rights Law must include the following

elements: "(1) that [he] engaged in a protected activity; (2) the employer was aware of this activity; (3) [he] suffered a materially averse action and (4) a causal connection exists between the protected activity and the adverse action." *Mi-Kyung Cho v. Young Bin Café, supra*, at *8.

1. *Mr. Olorode's Complaint That He Did Menial Work and Worked Long Hours Was Not A Protected Activity*

"Protected activity within the meaning of the NYSHRL... is conduct that 'oppos[es] or complain[s] about unlawful discrimination.'" *Id.* at *9, quoting *Forrest, supra,* at 312-13. *Mayers v. Emigrant Bancorp, Inc.,* 796 F.Supp.2d 434, 450 (S.D.N.Y. 2011). "[M]ere complaints of unfair treatment by an individual are not protected speech because unfair treatment by an employer does not implicate a public interest concern." *Aspilaire v. Wyeth Pharmaceutical, Inc.,* 612 F.Supp.2d 289, 308 (S.D.N.Y. 2009). "The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Id.* at 308-09. For example, there was no prima facie case for retaliation where a plaintiff was discharged after he claimed in a letter that that he was being "humiliated, harassed, threatened and manipulated by someone with authority" but failed to reference any religious basis for the harassment. *Bengard v. United Parcel Service,* No. 99–CV–8454, 2001 WL 1328551 *9 (E.D.N.Y., Aug. 22, 2001), *aff'd,* 48 Fed.Appx. 350 (2d Cir. 2002).

In this case, there is no material question of fact as to the basic parameters of Mr. Olorode's workplace complaints. Different witnesses characterize the complaints differently, but they all boil down to Mr. Olorode complaining that he did menial work beyond the scope of his employment on behalf of Mr. Nweke, personally, and, at least according to Mr. Olorode, that he was made to work long hours.

13

According to non-party witness Larry Rosenshein, the CEO of Streamingedge from April 2009 to April 2010, Mr. Olorode met with him in 2009 and complained as follows:

Q.   I'll just rephrase the question and ask, can you give us any greater specificity concerning Mr. Olorode's complaints about his mistreatment by management?

A.   He mentioned on one occasion he was asked to stay late and was asked to clean up the office. He mentions on one occasion he was asked to go on a trip to overseas, I think for the Bahamas. For that – exactly what he mentioned, I forgot what the reason was, but he was told he has to go on this trip.

Those are the two that I recall.

\*\*\*

Q.   Did Mr. Olorode complain concerning the volume of hours he was required to work?

A.   No.

Q.   Did Mr. Olorode complain that he was being treated differently than his peers?

A.   "Differently than his peers" in what respect? What do you mean?

Q.   That management was not treating him as well or was requesting that he do different tasks than they were asking his peers to perform.

A.   No.

Q.   Did Mr. Olorode complain that he was not receiving overtime compensation?

A.   No.

Q.   Did Mr. Olorode complain that he was routinely being requested to perform menial tasks, not necessarily in those words, but in sum or substance?

A.   Routinely, no. He mentioned that he was asked to clean the office on at least one occasion. Other than that, no.

Q.   Did Mr. Olorode complain that he was routinely forced to work on the weekends?

A.   No.

Q.   Did Mr. Olorode complain about an instant-message exchange in which one of the affiliates of StreamingEdge's employees referred to – in a conversation discussing Mr. Olorode – referred to him and his cohorts as "f-ing babies. They're so stupid, you could just tell by talking to them, monkeys." Did he complain concerning that instant-message exchange to you?

A.   No.

Q.   Did he complain that an employee of StreamingEdge or one of its affiliates responded to that comment by stating or responded later in that conversation by stating,"Yes, Taiwo, he's an f-ing moron."?

A.   No.

Q.   In regards to these questions, you stated no, is that because Mr. Olorode did not make such a complaint, or you don't recall if he made such a complaint?

A.   I don't believe he made those complaints, no.

**(Exhibit Q, Deposition of Non-Party Witness Larry Rosenshein, July 10, 2013, pp. 15-20).**

At his own deposition, Mr. Olorode, when asked about complaints he made to Mr. Rosenshein and others, stated that he had complained about long hours, starting in approximately April 2008 (*two years* before he was terminated) **(Exhibit N, Olorode Deposition Transcript dated January 9, 2013, pp. 274-75)**; that he complained about long hours in November 2008 at a meeting at which Wilson Nweke, Hideki Okubo and Amy Tsang were in attendance (***id.*, pp. 299-300**); in late summer or early fall 2009 he complained of doing personal work for Champion Nweke (Wilson's nephew) (***id.*, p. 358**); in "February or March 2010" he complained to Adnane Jaballah that he had to do work outside his job description (***id.*, p.368**).  This comports with the Amended Complaint, in which Mr. Olorode alleged:

> In our around May of 2008 Olorode complained to Adnan [sic] Jaballah, Streamingedge's Global Developer [sic] Manager, *concerning the menial tasks* that Wilson assigned to him which were unrelated to his duties as a Systems Support Analyst, *the additional hours* he was forced to work without compensation, and the retaliation he suffered for complaining about such *assignments and hours.*

**(Exhibit A, ¶ 28** – emphasis added).[4]  In other words, even in his pleadings, Plaintiff never alleged any detail that might support a finding that he had been retaliated against for complaining about unlawful discrimination.

With no complaint about unlawful discrimination, Mr. Olorode cannot meet either the first or second prong of a prima facie case for retaliation.  *See Mi-Kyung Cho, supra.* Complaining about long work hours or menial tasks is not a "protected activity," and therefore any such complaints would not put an employer on notice that Olorode had engaged in a protected activity.  Furthermore, Mr. Olorode never made a complaint to Human Resources alleging illegal discrimination (**Fayman Affidavit, ¶ 8**), even though he knew where the department was located and knew who Lyudmila Fayman was (**Exhibit M, pp. 140-41**).

---

[4] It is not clear what "retaliation" is being alleged here, as no adverse job action had yet occurred.

Moreover, was aware of the general office policies of "what is acceptable on the job, what kind of behavior, what's not acceptable" from earlier jobs (*id.*, p. 163).

Streamingedge does not dispute that Mr. Olorode has satisfied the third prong of a claim for retaliation, namely that he suffered an "adverse" job consequence – he was in fact terminated.[5]

### 2. There Is No Causal Connection Between the Allegedly Protected Activity and Olorode's Termination

The fourth prong of a prima facie case for retaliation is that there must be a causal connection between the "protected activity" and the adverse action. See *Yoselovsky v. Associated Press*, 917 F.Supp.2d 262, 277-78 (S.D.N.Y. 2013). Mr. Olorode can establish no such connection. *Even if* Mr. Olorode's complaints about his hours and work assignments could somehow be construed as a protected activity, there is absolutely no evidence that these complaints were in any way related to his eventual termination in April 2010. Olorode testified at his deposition that he began to complain about his hours and task assignment as early as April 2008 (**Exhibit N, p. 275**), yet he continued to work at Streamingedge for an additional two years. Olorode's meeting with Larry Rosenshein in the summer of 2009, at which he claims to have complained about work hours and menial tasks, occurred eight or nine months before he was terminated in April 2010 (*id.*, p. 276).

---

[5] If, in fact, what Mr. Olorode alleges is that the "adverse consequence" was being made to work long hours and/or being assigned menial tasks, neither of these would be considered an "adverse consequence." See *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *Galabya v. New York City Board of Education*, 202 F3d 636, 640 (2d Cir. 2000); *Fridia v. Henderson*, No. 99 Civ. 10749, 2000 WL 1772779 *7 (S.D.N.Y., Nov. 30, 2000) (excessive work, denials of request for leave with pay, and supervisor's general negative treatment of plaintiff not "materially adverse changes to the terms, conditions or privileges of employment"); *Katz v. Beth Israel Medical Center*, No. 95 Civ. 7183, 2001 WL 11064 *14 (S.D.N.Y., Jan. 4, 2001) ("Being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions."). See *Potash, supra*, at *18; *Miller v. Praxair, Inc.*, 408 F. Appx. 408, 410 (2d Cir. 2010).

"[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Wilson, supra,* at *15. *See also, Moore, supra,* at *19. In this action, Mr. Olorode was terminated more than eight months after his conversation with Mr. Rosenshein, and, according to his own testimony, *two years* after he first began to complain about his hours and work assignments.

The evidence also shows that while Mr. Olorode was not terminated "for cause," when Hideki Okubo was instructed to select a Systems Support Analyst to be terminated as part of the cost-cutting measures, Mr. Olorode was the logical choice as the person to be terminated. Mr. Okubo was concerned that Mr. Olorode, who had difficulty getting to work on time, performing his duties and getting along with co-workers, would be unable to handle the increased workload that would be the result of having a smaller department. (**Okubo Affidavit, ¶ 38**). Mr. Olorode had also been a Streamingedge employee for a shorter time than either of the other two Systems Support Analysts.(*id.,* **¶ 14**). Moreover, as set forth in Point I, *supra,* Streamingedge had a legitimate, non-discriminatory reason for terminating Mr. Olorode's employment as part of a reduction in workforce. All of this evidence rebuts any inference that might be drawn about any causal connection between Mr. Olorode's complaints and his termination in April 2010.

There can be no inference of causation, nor is there any direct evidence that Mr. Olorode can point to in support of his allegation that his complaints played any role in his termination, let alone his conclusory assertion that he was terminated because of any protected activity in making such complaints. Plaintiff has failed to set forth a prima facie case of retaliation under the New York State Human Rights Law, or to adduce evidence during discovery that would support such a finding. For this reason, the Third Cause of Action must be dismissed.

17

## POINT III
## STREAMINGEDGE MUST BE AWARDED JUDGMENT DISMISSING PLAINTIFF'S CLAIMS MADE PURSUANT TO THE NYCHRL

**A.      Olorode's NYCHRL Discrimination Claim Must Be Dismissed**

Under the New York City Human Rights Law, a plaintiff must meet somewhat lower standards in order to defeat a motion for summary judgment. *Wilson, supra*, at *10. The court must apply a modified *McDonnell Douglas* analysis: in the third step, where the burden is on the plaintiff to rebut the defendant's proffered legitimate reason for the adverse employment action, the court uses a "mixed-motive" framework, wherein the plaintiff need only show that the employer was motivated at least in part by discrimination, in order to defeat the motion for summary judgment. *Id.* at *11.

In *Wilson*, the Court granted summary judgment, finding that the plaintiff had come forward with no evidence whatsoever of race- or gender- based animus, and that plaintiff's belief that she was discriminated against "appear[ed] to be nothing more than the type of speculation that is unable to withstand a motion for summary judgment." *Id.* at *12. The same is true in the present action: Mr. Olorode is unable to offer any admissible evidence to support his claim that he was discriminated against on the basis of his national origin, in violation of the New York City Human Rights Law. His subjective, conclusory belief that discrimination was the reason for his discharge will not satisfy even the more lenient criteria of the New York City Human Rights Law. The Second Claim must be dismissed.

**B.      Olorode's NYCHRL Retaliation Claim Must Be Dismissed**

The analysis of retaliation claims under the New York City Human Rights Law is also "somewhat broader" than its State and Federal counterparts. *Wilson, supra*, at *13. "The elements of retaliation under the NYCHRL differ only in that the plaintiff need not prove any

adverse employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Gutierrez v. City of N.Y.,* 756 F.Supp.2d 491, 509 n. 12 (S.D.N.Y.2010) (quotations and citation omitted). In essence, the definition of "adverse employment action" has been expanded.

The definition of "protected activity," however, is the same under the NYCHRL: "[p]rotected activity within the meaning of the NYSHRL and NYCHRL is conduct that "oppos[es] or complain[s] about unlawful discrimination." *Mi-Kyung Cho, supra,* at *9.

In the present case, the analysis presented in Point II B, *supra,* under the New York State Human Rights Law, holds true for Mr. Olorode's retaliation claim under the New York City Human Rights Law. Mr. Olorode has failed to establish the first, second or fourth elements of a prima facie case for retaliation: (1) engaging in a protected activity; (2) the employer's awareness of the employee's engaging in the protected activity, and (4) a causal connection between the protected activity and the adverse employment consequence. See Point IIB, *supra.* Furthermore, even if, under the NYCHRL, some aspect of Mr. Olorode's alleged mistreatment, other than his termination, might somehow be deemed an additional "adverse employment action," his claim still fails because he has failed to demonstrate that he engaged in a protected activity, and that such "adverse employment action" was the result of any such protected activity.

For this reason, Streamingedge should be awarded judgment dismissing the Fourth Claim.

### POINT IV
### PLAINTIFF'S CLAIM FOR OVERTIME PURUANT TO THE FLSA AND THE NEW YORK LABOR LAW MUST BE DISMISSED

**A.    Mr. Olorode was an Exempt, Salaried Computer Employee**

The FLSA requires that employees be compensated for every hour worked over forty

hours per week "at a rate not less than one and one-half times the regular rate at which he is employed." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25, 126 S.Ct. 514 (2005) (quoting 29 U.S.C. §207(a)(1)). However, the FLSA exempts certain categories of employees from its overtime requirements, including, but not limited to, computer employees (*see* 29 U.S.C. §213(a)(17)), administrative employees (*see* 29 U.S.C. §213(a)(1)), or some combination of the two (the "combination exemption", *see* 29 C.F.R. §541.601). *Clarke v. JPMorgan Chase Bank, N.A.,* No. 08 Civ. 2400, 2010 WL 1379778, at *15 (S.D.N.Y., March 26, 2010); *Cunningham v. Electronic Data Systems Corp.*, 754 F.Supp.2d 638, 643 (S.D.N.Y. 2010). The FLSA does not itself define certain terms for purposes of these exemptions, but directs the Secretary of Labor to do so by regulation. 29 U.S.C. § 213(a)(1). The Secretary's regulations have the force of law, and are generally given controlling interpretive weight. *See, Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905 (1997).

The FLSA exempts from its overtime requirements "any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty" is:

> (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
>
> (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
>
> C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
>
> (D) a combination of duties described in subparagraphs (A), (B), and C) the performance of which requires the same level of skills, and who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $27.63 an hour.

20

*Clarke, supra* at *15-16 (quoting 29 U.S.C. § 213(a)(17)); *see also* 29 C.F.R. §541.400, delineating a "General rule for computer employees."

The New York Labor Law Section applies the same exceptions as the FLSA:  N.Y. Comp. Codes R. & Regs., Title 12, § 142-3.2 ("[A]n employer shall pay employees [overtime wages] subject to the exemptions of Section 13 of the Fair Labor Standards Act...."). *Reiseck v. Universal Communications of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010).  Thus, if Mr. Olorode is an exempt computer employee under the FLSA, he is also one under the Labor Law, and thus cannot maintain his state law claim for overtime.

To determine an employee's "primary duty", the Court must look to the employee's "principal, main, major or most important duty." *Clarke, supra* at *16 (quoting 29 C.F.R. § 541.700). "'Employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement.'" *Id.*

Hideki Okubo, Mr. Olorode's immediate superior at Streamingedge, states in his Affidavit that Mr. Olorode's job duties as a Systems Support Analyst were as set forth in the November 2007 Employment Agreement:

> Duties shall include but shall not be limited to systems analysis, software research and development, support, maintenance and testing, networking and assistance with site installations.  In addition [Mr. Olorode] shall perform other duties as are incidental, implied from the foregoing, consistent with the background, training, and qualifications of [Mr. Olorode] or may be reasonably delegated as being in the best interests of the company.  [Mr. Olorode] shall devote full time to his employment and expend best efforts on behalf of [Streamingedge]...

**(Okubo Affidavit, ¶ 15, quoting ¶ 3 of November 2007 Employment Agreement, Exhibit C).**

Mr. Olorode testified at his deposition about the duties of a Streamingedge Systems Support Analyst, both as explained to him at his job interview, and then as he actually experienced on the job:

> Q.     What were you told [by Mr. Okubo] your job duties would be?
> A.     It was mainly systems and support of – systems support of company proprietary productive services, which was proprietary software in the areas of trading platforms – trading platforms, some middle office applications like straight-through processing. They call it STP.
> Q.     Is that a proprietary Streamingedge –
> A.     Exactly. And, also, there are also like software development I was told I may be required from time to time to test them to see the functions and everything else. And, also, I remember very well what I was also told that time was – I would also have to brush up on my financial information on – it's not just software; it is also finance-based, so you have to understand. So one is not more important than the other. I remember exactly, that was the phrase they were telling me too, that once you come in, we would have to get you a quick training on exactly what we offer and everything there.

**(Exhibit M, pp. 113-114)**. Mr. Olorode also testified about how essential his function was at

Streamingedge:

> Q.     Were you required to let anybody know that you had arrived at work?
> A.     Yes. Part of what I did entailed that you knew I was at work. It was that critical to the operation of Streamingedge at that time, because when I arrived there was a specific e-mail that had to go out by 7:00 or 7:45 or 7:00 every morning.
>
> ***
>
> A.     So you would have to check the employee systems to make sure – basically, all the live systems that we have deployed, which are realtime trading systems, both from the server side to the user side. We have to also go around different desks and check to make sure that once we input – there are some tests that I have to conduct starting at 6:15 in the morning and has to be completed by a certain period of time.
>          So once you were done, there was an e-mail sent out, called a morning check e-mail, which indicates that these systems we are going to be using for the trading day have been checked and trading day can proceed.

**(*Id.*, pp. 120-121)**.

In addition, Mr. Olorode is a highly-trained computer specialist: his complaint alleges,

and his deposition testimony bore out, that he received at least two degrees in the field of

computer analysis, systems, and design, and that he had ten years experience in the field prior to

obtaining employment at Streamingedge. **(Exhibit A, ¶¶ 12-13; Exhibit M, pp. 32, 39, 56-59,**

66).[6]

Based on the foregoing, the evidence in this matter leads to the conclusion that Mr. Olorode was a "computer employee" within the definition of 29 U.S.C. §213(a)(17) and 29 C.F.R. §541.400.

A further requirement for a computer employee to be exempt from the FLSA's overtime requirements is that he be a salaried employee earning at least $455 per week.  29 C.F.R. § 541.400(b).  It is undisputed that at the outset of his employment, Mr. Olorode was paid a salary of $53,000 per year, and that his salary was increased to $60,000 per year in March 2008. **(Exhibit N, p. 322)**.

29 C.F.R. § 541.602 provides, pertinent part, as follows:

(a) General rule.  An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly received each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.  Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.  Exempt employees need not be paid for any workweek in which they perform no work....

Mr. Olorode's pay stubs, included within **Exhibit E**, demonstrate that he was paid a fixed sum with every paycheck, based on the pro-rata division of his annual compensation.  Moreover, Mr. Olorode was even paid his full salary during his month-long medical leave, in January 2010, despite working no hours at all during this period.  (*Id.*)

---

[6] While Mr. Olorode claims that he spent work time performing tasks unrelated to his job as a Systems Support Specialist, there is no admissible evidence, nor is there even a claim, that he spent more than 50% of his working hours on such tasks; in his Amended Complaint, he alleged that the unrelated tasks caused his workweek to go from 40 to more than 60 hours (**Exhibit A, ¶¶ 20-25**) – thus, even if this were true, he would still have spent approximately 2/3 of his working hours performing his Systems Support Analyst duties.

Mr. Olorode was a salaried, exempt computer employee not entitled to overtime pursuant to the FLSA or the New York Labor Law.  For this reason, the Fifth and Sixth Claims must be dismissed.

**B.    Mr. Olorode was an Exempt, Salaried Administrative Employee**

The FLSA and New York Labor Law also exempt from overtime compensation "any employee employed in a bona fide executive, administrative, or professional capacity." *Amendola v. Bristol-Myers Squibb Co.,* 558 F.Supp.2d 459, 472 (S.D.N.Y. 2008) (quoting 29 U.S.C. § 213(a)(1)) and citing *Freeman v. National Broadcasting Co., Inc.,* 80 F.3d 78, 82 (2d Cir. 1996). The Department of Labor defines an "employee employed in a bona fide administrative capacity" as someone whose (1) "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and whose (2) "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." *Amendola, supra* (quoting 29 C.F.R. § 541.200(a)). Under those regulations, Olorode is an exempt employee.

To satisfy the first requirement, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Amendola, supra* at 473 (quoting 29 C.F.R. §541.201(a)). This category of work includes "computer network, internet and database administration." *Cohen v. Gerson Lehrman Group, Inc.,* No. 09 Civ. 4352, 2011 WL 4336683 at *4 (S.D.N.Y. Sept. 15, 2011) (quoting 29 C.F.R. § 541.201(a)). The exemption may apply if an employee's primary duty is "directly related to the management or general business operations of the employer's customers," including work as "advisers or consultants to the employer's clients or customers...." *Id.* (quoting

22 C.F.R. § 541.201(c)).

As to the second requirement for the administrative exemption, "'the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.'" "'The term matters of significance refers to the level of importance or consequence of the work performed.'" 29 C.F.R. § 541.202(a). *Amendola, supra* (quoting 29 C.F.R. § 541.202(a)).

Determining an exercise of "discretion and independent judgment" is based on multiple factors, which "include, but are not limited to:"

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Cohen, supra* at *4-5 (quoting 29 C.F.R. § 541.202(b)).

The regulations further explain that "[t]he exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision." *Amendola, supra,* at 474 (quoting 29 C.F.R. §541.202(c)). Employees' work performance may satisfy this requirement "even if their decisions or recommendations are reviewed at a higher level." *Id.*

Mr. Olorode testified at his deposition that that his work involved the exercise of discretion, expertise, and independent judgment in connection with Streamingedge's business activities, and that his job was critical to the trader clients' ability to start their workday (**Exhibit M, pp. 120-21**).

Mr. Olorode's testimony details how the nature of his work was, in theory and in practice, that of a highly educated, autonomous employee whose work was intimately related to Streamingedge's core business as an "information highway" in the securities industry. Furthermore, his supervisor, Hideki Okubo, confirms in his Affidavit that Mr. Olorode worked "with minimal supervision." (**Okubo Affidavit, ¶ 16**). For these reasons, Mr. Olorode was an administrative employee exempt from the overtime provisions of the FLSA and the New York Labor Law.

## C.   Mr. Olorode's FLSA Claim is Partially Time-Barred

Mr. Olorode started his employment with Streamingedge on November 6, 2007. (**Exhibit A, ¶9**). His employment with Streamingedge terminated effective April 13, 2010. (*Id.*). Mr. Olorode commenced this action on October 3, 2011.

The statute of limitations for an FLSA overtime claim is two years. *Clarke, supra* at *9 (citing 29 U.S.C. § 255(a)). A claim of a wilful violation has a limitations period of three years. *Id.* A willful violation occurs when the employer knowingly or recklessly disregarded its obligation to pay overtime to the employee. *Clarke, supra* at *10. The Plaintiff has conclusorily alleged that Streamingedge committed wilful violations of the FLSA.   (**Exhibit A, ¶¶ 89, 91**). There is, however, no evidence whatsoever to support this conclusory allegation.

Olorode has not provided a shred of evidence that Streamingedge knew that it was not fulfilling its alleged overtime obligation or that it recklessly disregarded it.   Merely reciting the

word "wilful" in the complaint, as Plaintiff has done here, is not sufficient to withstand a motion for summary judgment.

> Proof of willfulness requires a "factual showing" of an employer's knowing or reckless violation of the FLSA…An FLSA plaintiff seeking to invoke the three-year limitations period cannot survive a motion for summary judgment unless he "make [s] a competent demonstration that there [is a] trialworthy issue as to whether [the employer] 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"

*Clarke, supra*, at *10 (citations omitted).

Since the evidence does not indicate in any way that Streamingedge willfully violated the overtime provisions of the FLSA, the two-year statute of limitations period applies, and any claims that predate October 3, 2009 are time barred.

However, should the Court find that Olorode has sufficiently shown that Streamingedge committed wilful violations of the overtime provisions of the FLSA, Olorode's claims preceding October 3, 2008 are barred by the relevant three-year limitations provisions of the FLSA.

**D.    Plaintiff Did Not Work the Overtime Hours Alleged in the Amended Complaint**

Even if the Court were to find that Mr. Olorode was a non-exempt employee entitled to overtime at Streamingedge, Mr. Olorode's claim is belied, at least in part, by records maintained by Hideki Okubo.  (**See Okubo Affidavit, ¶ 35, and Exhibit K**).  The record in this case does not reflect that Mr. Olorode worked the overtime hours alleged in the Amended Complaint.

**POINT V**
**STREAMINGEDGE IS ENTITLED TO JUDGMENT DISMISSING PLAINTIFF'S**
**CLAIM FOR BREACH OF CONTRACT**

Mr. Olorode's Seventh Claim alleges a breach of contract based on the terms of the proposed March 2008 agreement (**Exhibit A, ¶¶ 97-101**). This Agreement was never signed by Plaintiff, however (**Okubo Affidavit, ¶17**) and is of no force and effect. Most of the recovery it seeks, for failing to provide three-months notice prior to termination without cause, failure to pay

a "mandatory" bonus, and failing to pay Plaintiff for unused sick and vacation days, is not provided for in the fully-executed Agreement of November 2007.[7]

As set forth in the Affidavit of Hideki Okubo, Systems Support Analysts. And even Mr. Okubo himself, did not receive bonuses during the time Mr. Olorode worked at Streamingedge (**Okubo Affidavit, ¶18**). Therefore, any claim to a "mandatory" bonus is unfounded – the November 2007 Agreement provides that "[t]he annual bonus for each fiscal year during the Term of Employment shall be payable in accordance with the regular payroll practices of the Company applicable to similarly situated senior Employees of the Company or Parent, as applicable, as in effect from time to time. The Management on discretionary basis shall grant this Bonus Payment." (**Exhibit C, November 5, 2007 Employment Agreement**).

Plaintiff's argument that he is entitled to severance pay and unused vacation and sick pay must fail, by the terms of the November 2007 Agreement. Paragraph 11 of the Agreement provides that an employee will only be entitled to such payment upon the execution of a release in favor of Streamingedge. (***Id.*, ¶ 11**). While Mr. Olorode was presented with such a release when he was terminated (**Exhibit N, pp. 426-27**), he did not sign it (***id.*, p. 477**). Thus, he has no entitlement to any severance, vacation or sick days. Moreover, Mr. Olorode was frequently absent from work and took a paid, month-long sick leave in January 2010 (**Okubo Affidavit, ¶¶ 34-35**).

For this reason, this Claim must be dismissed.

---

[7] This Agreement is not the basis of the Claim. Nevertheless, Mr. Olorode's additional claim that he was not reimbursed for business expenses is not contested, in terms of Olorode's entitlement to any such legitimate, documented expenses. Nevertheless, he has not come forward with adequate proof of such unreimbursed expenses.

## CONCLUSION

For all of the reasons set forth in this Motion, Defendant Streamingedge, Inc. respectfully requests that the Court grant it summary judgment, pursuant to Fed.R.Civ.P. 56, dismissing the action in its entirety.

Dated: Hawthorne, New York
February 28, 2014

Respectfully submitted,

REISMAN, RUBEO & McCLURE, LLP
Attorneys for Defendant Streamingedge, Inc.

By: _____
MARK I. REISMAN, ESQ. (MR6073)
151 Broadway
Hawthorne, New York 10532
(914) 495-3050
mreisman@rrmllp.com

TO:
TAIWO OLORODE, *pro se*
151 Norfolk Street, Apt. 3
New York, New York 10002

29